Good morning. Welcome to today's Ninth Circuit arguments. I am Judge Sanchez. Please be seated. And with me is Judge Pires, and we are pleased to welcome Judge Selna from the Central District of California. And we want to thank Judge Selna for his willingness to take his time out of his busy schedule to help us with our cases. I want to remind counsel that we have read the briefs carefully and are familiar with the arguments, so please confine yourselves to the most pertinent points, and if you want to reserve time for rebuttal, please let us know in advance. We have a number of cases that have been submitted today. I'll just get through them very quickly. Diego Paracido Nunez Araujo v. Bondi, Elian Barbosa da Costa Araujo v. Bondi, Katie Buntong v. Bisignano, Carr v. Spindaker Insurance Company, and Burns v. Bisignano. And we have one case for argument, and that's Enterprise Management Limited v. Construx Software Builders. And counsel, you may approach. Thank you, Your Honors. And I would like to reserve five minutes for rebuttal. May it please the Court. My name is Kelly Benemeyer, and I represent the plaintiff and appellant, Dr. Mary Lippitt. There's no dispute in this case that Dr. Lippitt proved that Steve McConnell and his company infringed her copyrighted work. But the value of her achievement suffered because the trial court made three major errors that ran counter to the animating purpose of the Copyright Act and against the Supreme Court and this Court's precedent. The most impactful of those errors was the Court's denial of Dr. Lippitt's fee request based on reasoning that she won only a minor victory and that she ought to have been deterred in this case. Second, the Court failed to provide necessary instruction to the jury about how profits get proven in the copyright context after Mr. McConnell made false statements about that point in closing argument. And third, the Court failed to conduct the Rule 403 balancing test that was required when Dr. Lippitt sought to examine Mr. McConnell about his familiarity with a different case that involved Dr. Lippitt's same copyright. Due to those errors, this Court should remand the case for a new trial on damages and should reverse the Court's denial of the fee request and remand to the trial court for calculation of a fee award to Dr. Lippitt. I'd like to turn first to the decision not to award fees to Dr. Lippitt because I think that's the most impactful error in this particular case. And the trial court's analysis really runs contrary to this Court's case law about what constitutes success in a copyright case and also is at odds with the Copyright Act, which is designed – in the trial court's analysis effectively enables and rewards infringers for taking advantage of copyright. Do you think the trial court made an error of law? I do, Your Honor. What was the error of law that the Court engaged in or, you know, in arriving at the decision not to award attorney's fees? Because at the bottom, at bottom, our review is for abuse of discretion. Yes, Your Honor. But abuse of discretion can rest on an error of law. Right. And so I'm just curious if you think there's a – what would be the error of law? I think that there's a combination of inaccurate articulation of the law, particularly about how success is defined. Inaccurate articulation is not the same as an error, is it? The Court seems to have misunderstood what – I think the Court misunderstood what constitutes success and in treating a – an award of $8,000 as a small success and in particular in stating repeatedly that registration based on a derivative amounted somehow to lesser success than if she had proven registration – direct registration of her work. That is not supported by the law. The Copyright Act and this – the first appeal in this case reflected that registration based on a derivative is a perfectly viable way of registering an author's work and that should not be treated any lesser or weigh against an award of fees. I take it part of your concern is that the District Court also weighed defendant success on some of the other claims that plaintiffs had raised or theories. I think you – there was a dispute about that. It just sounds to me that this is a weighing of different factors as opposed to an error of law, that there's – I'm not hearing you say that there's a misstatement of law, but just that you have an issue with the way that the Court maybe overemphasized certain things and under-emphasized others, so why is that an abuse? It's an abuse of discretion, particularly in that it is a misapplication of the facts to the law and that itself can amount to an abuse of discretion. So in evaluating the factors, the Court essentially failed to – mis-evaluated how those factors serve the purpose of the Copyright Act. But you wouldn't disagree that the District Court identified the relevant factors and in fact went through each one. You may not agree with the result, but the District Court did not ignore the law. That is true, Your Honor. The District Court correctly identified the factors and walked through them, but it reached erroneous conclusions as to those factors. In cases in which courts have done that, they have evaluated the factors, but they have misapplied the facts to the law. For example, in this Court's case in Trisona Multimedia, this Court has said that is an abuse of discretion and this Court has instructed the trial court to award fees and remanded just for calculation of the amount of the award. And that would be appropriate in this case because the Court abused its discretion by saying that an $8,000 award was only a limited success. It abused its discretion. It acted contrary to the Act and contrary to the first appeal to say that registration through a derivative was only a limited success. It was fundamentally incorrect for this Court to say that a prevailing plaintiff ought to have been deterred in this case. You would agree that an award is not presumptive. So even with plaintiffs' win at the Ninth Circuit in establishing a new point of law, you're not arguing that an award had to be given in that context, do you? I agreed, Your Honor. An award is not presumptive, but in a case like this, an award serves the Copyright Act in that it encourages private enforcement where a statutory damages award isn't on its own going to be enough to incentivize a copyright holder to pursue their claim through the expenses of litigation. It also deters infringers, such as Mr. McConnell, from fighting claw, tooth, and nail, even though they have infringed. What about the fact of the District Court emphasizing some pretty unreasonable settlement offers? I think it was raised several times, the $4 million at a mediation when a statutory claim would be capped at $150,000. It seemed as if the District Court put some degree of emphasis in that stymie efforts for this case to be resolved far sooner. I take your point maybe the Court is not emphasizing things in the way that you would have, but why wouldn't that factor overcome other things within the Court's broader discretion? Well, first off, Dr. Lippitt never made a $4.2 million demand. The highest demand that she ever made to Mr. McConnell was $775,000. I recognize that that is high. On the other hand, though, you have Mr. McConnell making no monetary offer for the first two years of this case. He did make other types of offers. Basically, he offered to unwind all the effects of any infringement, didn't he? Stop using the chart, stop using the video, and so on. She couldn't have gotten any more relief on those topics, could she? There's hearsay testimony that he made that offer. Dr. Lippitt and her counsel have no recollection of such an offer being made and no record of such an offer being made for the first two years of the case. He did not take his YouTube video down. He did make that offer, though, correct?  To stop using the chart, to withdraw the video, and so on. At some point, maybe not in the first two years, at some point he basically gave away or would give away the equitable relief. And at the point that he made that, she had sunk a lot of time and expense in this case, believed that she had a meritorious case against him, that he had infringed her work. She was entitled to something for that. And she believed that she might be able to achieve attorney's fees because of it. It was reasonable for her at that point to decide to continue with the case because she thought that she could get a statutory damages award and potentially a fee award as well. You spoke of the purposes of the Copyright Act and damages. Isn't there an element of that that looks to the defendant to make sure the defendant isn't going to be held up for monumental attorney's fees on a relatively small claim? Isn't that a factor to consider? Your Honor, I think that both parties have responsibility, and if the defendant takes a position that they're going to defend despite a lack of truly valid defenses, and they are going to complicate the case, then there needs to be incentive for the party with the meritorious claim to take the case all the way to its conclusion. The Kirtzian case, the Supreme Court in the Kirtzian case indicated that we want to give litigants incentive to take their case through to completion if that's what's required. But my point is there's also a balancing factor on the defense side to make sure that a plaintiff with relatively small claims doesn't bring suit, run up the attorney's fees to coerce a settlement. I think that there are a few things involved in the proportionality. Do you agree that there's a defendant's part of the policies behind the copyright damages? Certainly, I agree that the Copyright Act is not solely about protecting copyright holders. The fee analysis is a two-part analysis. There's first the question of whether fees should be awarded, and then the question of what is reasonable. In terms of whether fees should be awarded, copyright holders are entitled to take action to protect their work, and that's what Dr. Lippitt did here. And the case did snowball. It ended up going through two trials and now two appeals, but that is because there was no monetary offer for two years, and then there were errors that required a new trial. Unfortunately, that snowballing has caused the case to become an expensive one. Can we switch gears to your other points? Why was defense counsel's closing argument ... I didn't understand that argument to mean plaintiffs bear the burden or that it would even require a clarifying instruction, so tell me why it is in your view. Absolutely. Dr. Lippitt put in evidence of defendant's revenue, and under the Copyright Act, if a plaintiff puts in evidence of revenue, that equals evidence of defendant's profits unless defendant then comes in and proves deductible expenses and elements attributable to factors other than copying. When Mr. McConnell said that Lippitt showed revenue, not profit, and told the jury, profit, you saw nothing on this point, not profit, those statements were directly contrary to the idea that in the copyright context, revenue equals profits. And so unless the jury had heard a clarifying instruction that in the copyright context, revenue equals profits, and understood that Dr. Lippitt's evidence was adequate to show profits, the jury was hopelessly confused about that factor. But the difficulty with that, though, is Ms. Lippitt elected to pursue statutory damages and profits are just one factor among many, and our cases say there's broad discretion to decide those things, and you're wanting to draw a curative instruction from a different election of recovery, where there is burden shifting. So I'm not quite sure why the court would go there if that was not the form of relief that was chosen. The legislative history and case law reflects that statutory damages can include, and perhaps if it's available, should include consideration of actual damages and profit evidence. In the statutory damages context, there are other considerations, but the evidence of actual damages can be instructive and can help inform that. And if we are going to be considering that, and we could in this case because Dr. Lippitt put in evidence to that point, then we need to be appropriately viewing that evidence. Did plaintiff's counsel have a chance to rebut and have a final rebuttal closing argument in this case? Yes, your honor. Was that issue raised in rebuttal, because I don't think it was in the excerpt of record. No, I don't believe it was, but it would not have. Why not if it was such an important issue? You know, why not have rebuttal saying, listen, we've done our part, we've established possible revenues from this. The other side hasn't shown any cost to reduce it in order to establish profits. Why if this was such an important prejudicial issue, why wouldn't counsel have raised it in rebuttal? Counsel's argument at that point would not have cured the issue. But no argument whatsoever. It kind of diminishes the notion that this failure to have a curative instruction somehow prejudiced the proceedings as a whole, doesn't it? I don't think so, your honor, because there was an understanding even there that there was an argument in counsel's, in Dr. Lippitt's counsel's closing argument that she had shown that Mr. McConnell had a revenue of about $46,000 from the charts. Then Mr. McConnell stood up and said, oh no, no profits. What you saw was revenue evidence. And at that point, the jury without instruction as to the law on how you actually calculate profits was just going to be hearing competing attorney argument on the point. It needed to hear from the court that there is law saying that in this context, revenue and profit are the same. They don't necessarily have the understanding that we would give them, you know, outside of the law where we do understand that profit is, is, and can be something different than  Let me see if my colleagues have any other questions. We'll give you a little time for rebuttal. Thank you, your honor. Good morning, your honor. Larry Graham, Lyle Graham-Jones on behalf of McConnell and Constructs. It seems to me turning first, if I may, to the issue of attorney's fees that the degree of success factor is the one that Lippitt directs the most attention to. I would say first off that the court clearly understood the factor. This court's jurisprudence has always articulated that factor as degree of success, not simply success. And in fact, you have to be a prevailing party in the first instance before the court even gets to that factor. So, of course, you had some success. The question is, how much success? And isn't that really, doesn't it really weigh in on how much the award should be, like the reasonableness of the award? I mean, so you just said it should, it weighs in, in both the decision on entitlement, you know, this is a case where you should get fees. Are you saying that that factor, the amount of the recovery, also is a factor in whether or not fees should be awarded? It is a factor on whether or not fees should be awarded, yes, Your Honor. And that's what this court has said, right, in the first instance. There being, you know, fees being two phases. First do I award fees, then we'll look at how much to award. I'm not getting at that second factor, if that's what Your Honor is asking. Yeah, that's what I was concerned about. No, no, this court has always articulated the degree of success as being a factor in evaluating, in the first instance, whether to award fees at all, before turning to how much. And the Glacier Court decision admonished the district court for blurring those two, but that's not what happened here. So here, though, she obtained a judgment in her favor. That just seems on its face to be, to make her a prevailing party under the Act. It does, Your Honor, but then once you're a prevailing party, that's the prerequisite for getting to the next factor, which evaluates, among other things, the degree of success. And so the court properly articulated that. And there's very little jurisprudence in this court about unpacking what the degree of success means. The Zazzle case is probably the one that gets the closest to it. It's unfortunately, in this instance, cited as non-precedential, although the district court cited it in its opinion. So here we are talking about that to some extent. And that one did evaluate, essentially, what the plaintiff sought and compare it to what the plaintiff got. And in terms of damages? Well, in damages, the whole enchilada, I would say. But damages, in that case, was the biggest part, getting the plaintiff having received a small percentage of what it sought. Let me ask you this, though. It's no small thing to be able to prevail at the Ninth Circuit and get a reversal that amounts to vacating an entire previous trial and running it back again. Did the district court sort of underemphasize that a little bit too much? Underemphasize the first appeal in this case? Well, I mean, in the sense of just the nature of this litigation and getting up to the Ninth Circuit, you know, the panel finding that there were triable questions on one part of it and for the other, that there was a means to establish protectability through the registration of the second chart. Why isn't that something to take more account of? I think it was taken into consideration. I would say that it's far more complicated than that one point. There are many things the court should and did consider. So in that first trial, we prevailed on summary judgment that the managing chart was not registered in the 202 registration. There was very little evidence, but this court found that Dr. Lippitt's declaration was itself sufficient to create a question of fact. That issue came back down. But in the second trial, the jury reimposed that decision. They entered that same judgment that we had won the first time, so we essentially entered it again. But, you know, sometimes it's a long march to victory. There's a lot of steps. True. And they did achieve a Ninth Circuit opinion that, you know, established law in the circuit. True. I would say, though— As Judge Sanchez said, that's nothing to be dismissed. I mean, that was a significant accomplishment. And I'm not dismissive of it, Your Honor. What I would say, though, is that if we look at what Lippitt sought and what she got, it's a subset, and the district court did not abuse its discretion in finding this factor in favor of the defendants. If we run through those things, there's quite a lot here. There were the non-copyright claims that were dismissed early on. There was the copyright claim against the book and the domino chart that was dismissed and never appealed. There was the aligning chart that was asserted as a basis for infringement. That was dismissed on summary judgment, went back down, should have been the law of the case. We won again on summary judgment, having won that on trial and summary judgment. There was the pursuit of multiple statutory damages. And while counsel said a moment ago they never sought $4 million as a settlement offer, they did say in the course of discovery that they were entitled to $4.2 million in damages based on 28 statutory damages awards. They repeatedly went after multiple statutory damages awards based on multiple defendants, multiple registrations, multiple alleged works of authorship, multiple alleged acts of infringement. They got one. In the first trial, the judge said, you get one. There was never any objective reasonable position in the law to pursue more than one. We went back on remand and they again sought a whole bunch. They got one. So if you look at the things that they got, oh, and also the infringement was found not to be willful. So if you look through the long list of things they pursued, which was gigantic and what they actually got, the factual finding by the district court that the degree of success was limited is not clearly erroneous, not an abuse of discretion. Turning to the settlement discussion, McConnell viewed this at the outset as what it was, a small case. The previous panel at one point in the colloquy of oral argument actually said as an aside, this seems like a small potatoes case, the words of this court, wondering why it hadn't settled. At the outset, I, McConnell, initiated a settlement discussion, tried to resolve it in the way Your Honor suggested. In the record, it clearly has those. We'll take the chart down. We'll stop using it. We'll redirect some things. We'll do some things of that sort. I also said, I don't have authority from my client to make an offer at this point, but if I could get him to pay $5,000, would that be acceptable? That's the part that was excluded from hearsay and so forth and the counsel doesn't recall. So be it. Fine. We won't count that part because that's excluded at this point. But we tried to resolve it as a small potatoes case the way it should have been. It became a runaway. Multiple statutory damages award, $4 million of requests in the course of discovery. It's one of those carrot in front of the donkey kinds of things. We couldn't get there. We just, it was always way out of reach from what was reasonable. Lippitt's briefing suggests that the court wanted to put a disincentive on Lippitt for enforcing her copyright. That's not what the court said. What the court said was, a plaintiff in that position should not be encouraged from pursuing it this way. A plaintiff with a small case should pursue it as a small case. If it had been pursued as a small case, it would have resolved. We would have never gotten this far. There's no way that McConnell would have gone all this way if there had been a reasonable settlement ground to pursue. Was there a mediation here? There was a mediation, yes, Your Honor. At the District Court or at the Court of Appeal? There was one at the District Court formally. We went through the process of the Court of Appeals and it didn't really go anywhere. But at the District Court there was a mediation? There was a mediation. And that's the one where on the eve of the mediation going into it, Lippitt emphasized the $4 million. They didn't offer that. They offered a compromise of something south of a million based on that. But there was a mediation that didn't succeed. I agree with the nature of the court's question that in terms of the fee award, there was no legal error. The court understood the law. It articulated the law correctly. Unfortunately, it then reached findings of fact that were not clearly erroneous. And it's difficult to put your finger on exactly what Lippitt thinks the clear error was. I hear disagreement. I hear they wanted it to go the other way. But it's all consistent with the record. And the judge did not commit clear error in reaching those decisions on the fee award. The overvaluation and objective unreasonableness also bears a bit of attention. The $4 million, we've talked about the 28 statutory awards. There was never any objective basis for that. But at the outset, the pursuit of the Consumer Protection Act claim and the right of privacy claim also created a massive impediment at the start. As a small potatoes case that could have been settled and resolved as a small potatoes case if it had been treated that way at the outset, including those claims up front, clearly for the additional settlement value made it hard to settle this case. And that Consumer Protection Act case, much like the pursuit of 28 statutory damages awards, was objectively baseless, and knowingly so in this case. And I hear counsel in their brief say, hey, these things turn on their facts. Every Consumer Protection Act claim has to be looked at independently to see if it's preempted by the Copyright Act. That's easy for lawyers to say, but it's not the way it works here. If your articulation of a Consumer Protection Act claim is, I have a copyright and the defendant copied it, that articulation of facts is preempted by every single Consumer Protection Act state law in the land. It doesn't matter what it says. If that is covered by the Act, it's preempted to the extent it covers that. They had that decision in a prior case. They knew it was preempted. They put it in this one as well. Why? For the same reason they put in the $4 million in statutory damage awards in their discovery responses to make this case have large settlement value. Counsel brushes it aside as posturing. Posturing is one thing if it's still well-grounded in the law, but aggressive. This stuff wasn't well-rooted in the law. They could never get those things. And it imposed expense. It made it hard for us to settle. Despite our reasonable efforts to do so, it just wasn't going to get there. The other two issues I think are sufficiently well-rooted in the briefs, unless the Court has questions, I'll surrender my time. Thank you very much, Counsel. Counsel, we'll give you a couple of minutes for rebuttal. I'd like to turn back to this core issue of the settlement posture of this case because I understand that as a significant issue for this Court. And I need to emphasize that Dr. Lippitt's initial settlement demands were reasonable. Her initial demand was in the realm of what she could have obtained within one statutory damages award. And we don't know what would have happened if Mr. McConnell had made any monetary offer at all, any offer for the first two years of the case. We just don't know because he didn't do it. If he thought it was a small potatoes case, he could have made an offer that reflected that, but he did not. And instead, he chose to litigate the case. Now, I don't understand why he chose to litigate the case, given that he says that he did not believe that the chart had significant value. We don't want to be incentivizing infringers who don't value the thing that they infringed to be fighting claw, tooth, and nail to take a case through expensive litigation. That's exactly the kind of case that they should be trying to get out of and get past. If there was unreasonable conduct in the course of the party's settlement negotiations, then that certainly went both ways and both parties should have been, you know, that factor should have been neutral, effectively. The other factors, though, the other fogarty factors that the court was to weigh, all of those should have weighed in favor of Dr. Lippitt. She achieved success in the case. She proved copying of the chart that she brought her claim about. She proved that he had copied. However she accomplished proving that, she did. She showed to the court and the court ignored that Mr. McConnell made unreasonable challenges repeatedly to her authorship. There are a number of instances in which the court seems to have misunderstood and misweighed the factors. Finally, I'd like to touch briefly back upon the statutory damages point and just reemphasize that statutory damages are designed to lessen the burden on plaintiffs when proof is challenging to come by and requiring her to take on some sort of additional burden to differentiate between revenue and profits would not serve that purpose. For those reasons, we would ask the court to remand for a new trial on damages and to instruct the trial court to award Dr. Lippitt attorney's fees and remand for calculation of that amount. Thank you counsel. Thank you both for your helpful arguments. The matter will stand submitted and court is adjourned.
judges: PAEZ, SANCHEZ, Selna